UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WESTGATE PRODUCTS, LLC,
WESTGATE CUPS, LTD, and
WESTGATE PRINTING, LLC,

        Plaintiffs,

  v.                                    Case No. 19-C-247

CAREY EDWARDS,

        Defendant.

**DECISION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Plaintiffs Westgate Products, LLC, Westgate Cups, Ltd., and Westgate Printing, LLC filed this action alleging a variety of state law claims against Defendant Carey Edwards. The court has jurisdiction under 28 U.S.C. § 1332(a). Presently before the court is Defendant's motion to dismiss Plaintiffs' amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3), asserting that he is not subject to personal jurisdiction in Wisconsin and that the Eastern District of Wisconsin is not a proper venue for this action. For the following reasons, Defendant's motion will be denied.

**ALLEGATIONS OF THE AMENDED COMPLAINT**

Westgate Cups, Ltd., which operates its business as Westgate Products, LLC, is a company that sells packaging, such as cups and food buckets, to various food service customers. Am. Compl. ¶¶ 14–15, Dkt. No. 3. Westgate Printing is a Wisconsin Limited Liability Company owned by Westgate Cups. *Id.* ¶ 16.

In May 2013, Defendant, who is domiciled in Missouri, began working for Plaintiffs as an independent contractor in a sales capacity. *Id.* ¶ 19. At that time, Plaintiffs had operations in Wisconsin and Missouri, with four of its six upper management employees located in Wisconsin. Patrick Carroll Decl. ¶ 3, Dkt. No. 14. Although Defendant was hired in a sales capacity, he also managed a Westgate facility in Grandview, Missouri. *Id.* ¶ 5. All plant staff at that facility reported to Defendant, and Defendant reported to Patrick Carroll, who is Westgate Cup's Chief Executive Officer and works out of Plaintiffs' Oshkosh, Wisconsin facility. *Id.* ¶¶ 1, 5. Defendant was to provide services exclusively on behalf of and for Plaintiffs' benefit. Plaintiffs provided Defendant with a car as well as a credit card to be used to further the services he was to provide Plaintiffs. Plaintiffs terminated their agreement with Defendant in May 2018. Am. Compl. ¶ 35.

Upon termination of the agreement, Plaintiffs learned that Defendant had used the Westgate credit card to pay for a significant amount of personal or other use that was unrelated to the work he provided for Plaintiffs and had not been approved by Plaintiffs. *Id.* ¶ 36. For instance, Defendant used the Westgate credit card to purchase concert tickets to see Britney Spears, Florida Georgia Line, Journey, Jason Aldean, Def Leppard, Nickelback, and Boston and to attend sporting events such as Dallas Cowboys games, St. Louis Cardinal games, and Kansas City Royals games. *Id.* ¶¶ 48, 50. Defendant also charged $10,765.57 to the Westgate credit card for expenses incurred at gentlemen's clubs and casinos. *Id.* ¶¶ 54, 56. Defendant used the Westgate credit card for luxury party limousines; to repair his wife's BMW car; for personal travel expenses related to vacations to Las Vegas, the Dominican Republic, Florida, Colorado, California, Cancun, and Canada; for first-class travel upgrades; for personal dining; for personal moving expenses; for personal gasoline

expenses; and for personal computer software and telephones. In all, Defendant charged $224,925.01 for personal expenses that were not authorized by Plaintiffs. *Id.* ¶ 79.

Plaintiffs also discovered that Defendant had engaged in self-dealing, even though he was required to exclusively perform work for Plaintiffs. *Id.* ¶ 37. In particular, Defendant used non-Westgate email addresses to conduct business with Plaintiffs' customers and vendors and only used his Westgate email address to communicate internally with other employees. *Id.* ¶¶ 38–39. Defendant also executed contractual agreements between Plaintiffs and third parties without Plaintiffs' knowledge or authorization. *Id.* ¶ 42. Plaintiffs sustained damages as a result of Defendant's conduct.

Although Defendant lived in Missouri while he provided services for Plaintiffs, Defendant was in daily email and telephone contact with those executives and employees that worked in Wisconsin. Carroll Decl. ¶ 10. Defendant spoke with Wisconsin-based executives and employees approximately five to ten times in a normal business week. *Id.* ¶ 11. He also emailed Wisconsin-based executives and employees approximately 20 to 25 times each week. *Id.* ¶ 12.

**ANALYSIS**

**I. Personal Jurisdiction**

Defendant asserts that the amended complaint should be dismissed for lack of personal jurisdiction. Rule 12(b)(2) of the Federal Rules of Civil Procedure governs motions to dismiss for lack of personal jurisdiction. Although the plaintiff has the burden of proving personal jurisdiction, "the burden is not a heavy one." *Burton v. Am. Cyanamid*, 128 F. Supp. 3d 1095, 1098 (E.D. Wis. 2015). In deciding whether personal jurisdiction exists, the court must accept all well-pleaded allegations in the complaint as true and may rely on affidavits, deposition testimony, exhibits, or

other evidence in the record. *See Felland v. Clifton*, 682 F.3d 665, 672 (7th Cir. 2012). The court must draw all inferences from the record in favor of the plaintiff. *PKWare, Inc. v. Meade*, 79 F. Supp. 2d 1007, 1011 (E.D. Wis. 2000).

"A federal district court sitting in diversity must apply the personal jurisdiction rules of the state in which it sits." *Kipp v. Ski Enter. Corp. of Wis., Inc.*, 783 F.3d 695, 697 (7th Cir. 2015). Under Wisconsin law, a court must engage in a two-step inquiry to determine whether it may exercise personal jurisdiction. First, the court must determine whether the defendant is subject to jurisdiction under Wisconsin's long-arm statute, Wis. Stat. § 801.05. *See Kopke v. A. Hartrodt, S.R.L.*, 2001 WI 99, ¶ 8, 245 Wis. 2d 396, 629 N.W.2d 662. If the statutory requirements are satisfied, the court must then decide whether the exercise of jurisdiction comports with the requirements of due process. *Id.*

**A. Wisconsin Long-Arm Statute**

Plaintiffs assert that the court has jurisdiction in this matter pursuant to § 801.05(8). That provision states:

> In any action against a defendant who is or was an officer, director or manager of a domestic corporation or domestic limited liability company where the action arises out of the defendant's conduct as such officer, director or manager or out of the activities of such corporation or limited liability company while the defendant held office as a director, officer or manager.

Wis. Stat. § 801.05(8). In other words, section 801.05(8) "treats a manager of a Wisconsin corporation as having consented to the state's jurisdiction." *See Kubin-Nicholson Corp. v. Gillon*, 525 F. Supp. 2d 1071, 1074 (E.D. Wis. 2007) (finding § 801.05(8) conferred jurisdiction when the defendant conceded that he was the Wisconsin corporation's New York sales manager and that the action arose out of his employment). Plaintiffs claim that Defendant held the position of vice

4

president of sales and managed one of Plaintiffs' facilities located in Missouri. Defendant asserts that he was an independent contractor and was not the vice president of sales. But Defendant does not dispute that he was the manager of Plaintiffs' Missouri facility. Accordingly, the court concludes that § 801.05(8) confers jurisdiction.

### B. Due Process

When the requirements of the long-arm statute have been satisfied, the court must determine whether the exercise of jurisdiction over the defendant comports with due process. *See Kopke*, 245 Wis. 2d 396, ¶ 8. "For a court to exercise personal jurisdiction over an out-of-state defendant, the key issue for constitutional purposes is whether the defendant has sufficient 'minimum contacts' with the forum state such that 'the maintenance of the suit "does not offend traditional notions of fair play and substantial justice."'" *Felland*, 682 F.3d at 672–73 (quoting *Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010)). The defendant must have "purposely established minimum contacts with the forum state such that he or she 'should reasonably anticipate being haled into court' there." *Tamburo*, 601 F.3d at 701 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). The Due Process Clause of the Fourteenth Amendment allows two categories of personal jurisdiction: general and specific. General jurisdiction requires that the defendant have continuous and systematic contacts with the forum state. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003).

Specific jurisdiction "exists for controversies that arise out of or are related to the defendant's forum contacts." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). For specific personal jurisdiction to be satisfied, "it is essential . . . that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state."

5

*Burger King*, 471 U.S. at 475 (citing *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Specific jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities, and (3) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Felland*, 682 F.3d at 673.

### 1. Conduct "purposefully directed" at the forum state

Defendant maintains that Plaintiffs cannot establish that his conduct was purposefully directed at Wisconsin. "[T]he nature of the purposeful-direction/purposeful-availment inquiry depends in large part on the type of claim at issue." *Id.* at 674. In this case, Plaintiffs assert intentional tort and negligence claims.

When the plaintiff's claims are for intentional torts, a plaintiff establishes that the defendant "purposefully directed" his activity at the forum state when the following requirements are satisfied: (1) intentional conduct (or intentionally and allegedly tortious conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state. *Tamburo*, 601 F.3d at 703. Although the personal jurisdiction inquiry in an intentional tort action necessarily turns on the merits of the plaintiff's claims, the plaintiff is not required to prove that the defendant actually committed the tort to proceed with the case; the allegations in the complaint will suffice. *Felland*, 682 F.3d at 676.

The first and third elements are satisfied for the tortious interference claims here. For each claim, Plaintiffs' amended complaint contains sufficient allegations to establish that Defendant engaged in "intentional and allegedly tortious conduct." *Tamburo*, 601 F.3d at 703. In addition,

there is no doubt that Defendant knew from his working relationship with Plaintiffs that they are Wisconsin entities and would feel the effects of any intentional tort in Wisconsin.

The parties disagree as to whether Defendant expressly aimed his tortious activities at Wisconsin. Defendant asserts that he is domiciled in Missouri and not Wisconsin, he never used the Westgate credit card to purchase anything in or from Wisconsin, his negotiations with non-Wisconsin companies cannot be deemed as contact with Wisconsin, his breaches of fiduciary duty were not expressly aimed at Wisconsin, he denies participating in conversations with Plaintiffs while he was outside Missouri, and nearly all of his business with Plaintiffs took place in Missouri.

"In all cases the point of the purposeful-direction requirement is to ensure that an out-of-state defendant is not bound to appear to account for merely random, fortuitous, or attenuated contacts with the forum state." *Id.* at 702 (internal quotation marks and citation omitted). The record here does not establish that Defendant's contacts with Wisconsin were random or fortuitous and instead demonstrates that Defendant engaged in a series of actions directed at Plaintiffs in Wisconsin while knowingly causing Plaintiffs' injury. Although Defendant asserts that most of his conduct occurred in Missouri, jurisdiction cannot be avoided "'merely because the defendant did not *physically* enter the forum State.'" *Id.* at 701 (quoting *Burger King*, 471 U.S. at 476). The Supreme Court has recognized that "a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King*, 471 U.S. at 47; *accord Heritage House Rest. v. Cont'l Funding Grp.*, 906 F.2d 276, 283 (7th Cir. 1990) ("Continental created a relationship which is naturally based on telephone and mail contacts rather than physical presence, and it should not be able to avoid jurisdiction based on that distinction."). The record reveals that Defendant's

7

contacts with Plaintiffs include daily phone calls and numerous emails with Plaintiffs' Wisconsin-based employees and executives. Defendant represented to Plaintiffs that he was working exclusively on behalf of Plaintiffs and reported directly to Westgate's CEO in Wisconsin, rather than a Missouri supervisor. He also used Plaintiffs' corporate computer network and received a regular paycheck from Wisconsin. Defendant's forum-state actions have a significant jurisdictional impact and was facilitated by Defendant's working relationship with Plaintiffs.

As to Plaintiffs' theft claim, Defendant used his Westgate credit card to steal money linked directly to Plaintiffs' Wisconsin headquarters. The card was authorized by Westgate's CEO from its Wisconsin headquarters. With respect to the fraudulent misrepresentations, Plaintiffs allege that Defendant wrongfully executed contracts and purchase orders between Plaintiffs and other entities and misrepresented the status of his business dealings to Plaintiffs, thereby causing harm to Plaintiffs in Wisconsin. As to his self-dealing and breaches of loyalty, Defendant used the contacts and proprietary information he obtained from his relationship with Plaintiffs and covertly developed business between one of Plaintiffs' competitors and one of Plaintiffs' primary customers. In other words, Defendant stole a customer that was managed by Plaintiffs in Wisconsin, cut Plaintiffs out of the arrangement, and benefitted from the transaction himself. Defendant made contact with Plaintiffs' Wisconsin-based managers and employees over the course of five years to develop trust. Those contacts are precisely what made Defendant's scheme possible because they are the communications through which Defendant made misrepresentations or obtained proprietary information to use in his dealings with Plaintiffs' competitors and customers. Accordingly, Defendant purposefully directed his tortious activities at Wisconsin.

The court also finds that Defendant purposefully directed his activities at Wisconsin with respect to Plaintiffs' claims of lack of due diligence and negligence. Plaintiffs allege that Defendant directed Plaintiffs to produce two injection molded fruit trays and failed to inform Plaintiffs that the tray design was a proprietary design of DecraStone Inc. His failure to fully disclose this information caused Plaintiffs injury in Wisconsin. Plaintiffs' remaining claims of negligence are predicated on the underlying tortious interference claims, for which it has been determined that Defendant purposefully directed his conduct at Wisconsin. Accordingly, this requirement is satisfied for those claims.

### 2. Injury "arises out of" Defendant's contacts with the forum state

"Even where a defendant's conduct is purposefully directed at a forum state, the plaintiff must also show that his injury 'arises out of' or 'relates to' the conduct that comprises the defendant's contacts." *Felland*, 682 F.3d at 676 (quoting *Tamburo*, 601 F.3d at 708). In this case, Plaintiffs' injuries are the direct result of Defendant's misrepresentations, breach of duty of loyalty, theft, negligence, and lack of due diligence. Defendant's conduct was aimed at Wisconsin for the purpose of causing injury there. Defendant's conduct was central to the fraudulent conduct alleged in the amended complaint and evidence the factual and proximate cause of Plaintiffs' alleged injury. In short, Plaintiffs' injury arises out of Defendant's contacts with Wisconsin.

### 3. Traditional notions of fair play and substantial justice

The final question is whether the exercise of personal jurisdiction comports with "fair play and substantial justice." *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)). The court should consider the following factors in making its determination: "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's

interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Burger King*, 471 U.S. at 477 (internal quotation marks omitted). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Id.*

Defendant asserts that he would be greatly burdened by having to litigate this case in Wisconsin. Although Defendant faces some burden in defending an action in Wisconsin, "out-of-state defendants *always* face such a burden, and there is no suggestion that [Defendant's] hardship would be any greater than that routinely tolerated by courts exercising specific jurisdiction against nonresidents." *Felland*, 682 F.3d at 677. In addition, Plaintiffs have a substantial interest in litigating in their home state, and Wisconsin has a strong interest in providing a forum for its residents "to seek redress for torts inflicted by out-of-state actors and injuries suffered within the state." *Id.*; *see also Tamburo*, 601 F.3d at 709 ("Illinois has a strong interest in providing a forum for its residents and local businesses to seek redress for tort injuries suffered within the state and inflicted by out-of-state actors."). In short, exercising jurisdiction over Defendant would not offend traditional notions of fair play and substantial justice.

For these reasons, I find that the court's exercise of personal jurisdiction over Defendant comports with the constitutional requirements of due process. Accordingly, Defendant is subject to personal jurisdiction in this court for the purposes of this action, and his motion to dismiss for lack of personal jurisdiction is denied.

**II. Venue**

Defendant also seeks to dismiss the complaint under Rule 12(b)(3) for improper venue. If a court determines that it is not the proper venue for the case, the court must dismiss the action. The plaintiff bears the burden of establishing that venue is proper. *Grantham v. Challenge–Cook Bros., Inc.*, 420 F.2d 1182, 1184 (7th Cir. 1969). Because no special venue provision applies in this case, the court will analyze whether venue is proper pursuant to 28 U.S.C. § 1391. Under § 1391(b), venue is proper in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought. 28 U.S.C. § 1391(b)(1)–(3).

Plaintiffs assert that § 1391(b)(2) is applicable because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district. The test under § 1391(b)(2) is not "whether a majority of the activities pertaining to the case were performed in a particular district, but whether a substantial portion of the activities giving rise to the claim occurred in the particular district." *TruServ Corp. v. Neff*, 6 F. Supp. 2d 790, 792 (N.D. Ill. 1998) (citation omitted). "[F]or events to be considered 'substantial' under the statute, it is sufficient for the plaintiff to establish that the events occurring in the forum district 'were part of the historical predicate for the instant suit.'" *Estate of Moore v. Dixon*, 460 F. Supp. 2d 931, 936 (E.D. Wis. 2006) (quoting *Master Tech Prods., Inc. v. Smith*, 181 F. Spp. 2d 910, 914 (N.D. Ill. 2002)). The events occurring in the forum must have a "close nexus" to the plaintiff's claims. *See id.* In addition, "[t]he substantial parts test of § 1391(b)(2) may be satisfied by a communication transmitted or not

11

transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action." *PKWare, Inc.*, 79 F. Supp. 2d at 1016.

Defendant asserts that venue is not proper here because a substantial number of activities giving rise to Plaintiffs' claims occurred in Missouri. But Defendant's regular communications and contact with Plaintiffs supplies the historical predicate for this suit. In this case, after he had obtained the trust of Plaintiffs through their business relationship and dealings, Defendant misrepresented certain information to Plaintiffs, entered into contracts with third parties without Plaintiffs' authorization and caused Plaintiffs to purchase excess product, failed to disclose that he abused his Westgate company credit card, and used proprietary information he gained from Plaintiffs for his own dealings. This conduct makes venue appropriate in this district. Accordingly, Defendant's motion to dismiss for improper venue is denied.

## CONCLUSION

For these reasons, Defendant's motion to dismiss for lack of personal jurisdiction and for improper venue (Dkt. No. 7) is **DENIED**. The Clerk is directed to set the matter on the court's calendar for a Rule 16 telephone conference.

**SO ORDERED** this  7th  day of June, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
